UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL JASON BERHOW,

               Plaintiff,

    -vs-                         **No. 1:15-CV-00566 (MAT)**
                                       **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

               Defendant.

---

## I. Introduction

Represented by counsel, plaintiff Michael Jason Berhow ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted to the extent that this case is remanded to the Commissioner for further

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

administrative proceedings consistent with this Decision and Order, and the Commissioner's motion is denied.

**II.  Procedural History**

Plaintiff protectively filed applications for DIB and SSI on March 19, 2012, alleging disability as of January 2, 2010 due to seizures, long term memory loss, tremors, weakness in his hands, tremors, headaches, and social difficulties. Administrative Transcript ("T.") 203-210, 224. Plaintiff's applications were initially denied. T. 120-21. At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bruce R. Mazzarella on October 2, 2013. T. 14-15, 41-119. On March 17, 2014, ALJ Mazzarella issued a decision in which he found that Plaintiff was not disabled as defined in the Act. T. 17-38. On April 28, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's determination the Commissioner's final decision. T. 1-6. This action followed.

**III. The ALJ's Decision**

Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2013. T. 22. At step one of the five-step sequential evaluation, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. *Id*. At step two, the ALJ found that Plaintiff suffered from the severe impairments of seizure disorder, history

2

of craniotomy, adjustment disorder, and alcohol and marijuana abuse, now in remission. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. T. 23. The ALJ particularly considered Listings 11.02, 11.03, 12.04, and 12.09 in making this determination. *Id.*

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform "a full range of work at all exertional levels" with the following specific limitations: cannot operate motorized vehicles; cannot work at unprotected heights or with sharp objects; is limited to performing simple, repetitive, routine tasks that require low contact with the general public. T. 25. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. T. 32. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. T. 33. Accordingly, the ALJ found Plaintiff not disabled. T. 34.

**IV. Discussion**

    **A. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the

decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Here, Plaintiff makes the following arguments in support of his motion for judgment on the pleadings: (1) the ALJ's finding that Plaintiff did not meet or equal the requirements of Listing 11.02 was not supported by substantial evidence; (2) the ALJ failed to give good reasons for affording less than controlling weight to the opinion of treating physician Dr. Dicky Oswari; (3) the ALJ failed to give good reasons for affording less than controlling weight to the opinion of treating physician Dr. Marc Frost; and (4) the ALJ erred by failing to consider or state what weight was given to the opinion of treating physician Dr. Gregory Bennett. The

4

Commissioner argues in support of her motion that the ALJ's determination is supported by substantial evidence and free from harmful legal error. For the reasons set forth below, the Court finds that remand of this matter for further administrative proceedings is necessary.

**B. The ALJ's Failure to Consider Dr. Bennett's Opinion Necessitates Remand**

As of September 2012, Dr. Bennett had been Plaintiff's treating physician for 15 years. T. 367. In June 2010, Plaintiff sought treatment with Dr. Bennett for frequent seizures that had been occurring for the prior six weeks. T. 301. Dr. Bennett noted that Plaintiff had undergone an emergency craniotomy in 1998 due to a brain abscess, secondary to a fusobacterium infection. *Id*. Dr. Bennett assessed Plaintiff with seizures related to chronic alcohol use and prior surgery for brain abscess, and prescribed Plaintiff with Dilantin. T. 304.

Dr. Bennett continued to treat Plaintiff for his seizures throughout 2011 and 2012, before referring Plaintiff to neurologist Dr. Marc Frost in September 2012. T. 306-308, 310-16, 362-65. On September 26, 2012, Dr. Bennett completed a residual functional capacity questionnaire related to Plaintiff. T. 367-70. Dr. Bennett assessed Plaintiff with chronic epilepsy due to brain abscess, with generalized seizures associated with a loss of consciousness. T. 367. Dr. Bennett opined that Plaintiff's seizures were likely to disrupt the work of his co-workers, and

5

that Plaintiff was unable to work at heights, work with "power machines that require an alert operator," or operate a motor vehicle. T. 369. Dr. Bennett further opined that Plaintiff's impairments were likely to produce good days and bad days and that Plaintiff would need to be absent from work about one day per month as a result of his impairments. T. 370.

In his decision, the ALJ noted that Dr. Bennett had completed a residual functional capacity questionnaire (T. 29), but did not consider the opinions set forth therein or state what weight was given to them. Plaintiff argues that this error necessitates remand, and the Court agrees.

Under the regulations in effect at the time the ALJ rendered his opinion, the Commissioner was required to give the opinion of a treating physician controlling weight if it was "well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78–79 (2d Cir. 1999). In evaluating a report offered by a claimant's treating physician, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 78–79 (quotation and citations omitted). Where a treating physician's opinion on the nature and severity of a claimant's disability is not afforded controlling weight, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation and citation omitted; alteration in original). In particular, the applicable regulations direct the ALJ to assess the weight to be

6

given by reference to "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. § 416.927(d)(2)).

Here, the ALJ plainly did not comprehensively set forth the reasons for the weight assigned to Dr. Bennett's opinion, because he did not even state what weight it was given. This was error. *See, e.g., Kentile v. Colvin*, 2014 WL 3534905, at *15 (N.D.N.Y. July 17, 2014) (finding reversible error where the ALJ "neglected to assign any weight to the [treating] doctor's opinions/diagnosis and failed to explain why he disregarded the opinions entirely"); *Ligon v. Astrue*, 2008 WL 5378374, at *12 (E.D.N.Y. Dec. 23, 2008) ("[T]he ALJ utterly failed to perform the required task of determining what weight [the treating source opinion] deserved.... Here the ALJ failed, for example, to take into account that Hedrych is a trauma specialist, or to consider the frequency of his examinations of Ligon and the length, nature and extent of Ligon's treatment relationship with Hedrych.").

Moreover, while it is true that "the failure to explicitly assign weight to an opinion is harmless in certain situations, such as where the ALJ's decision reflects that the opinion was considered or where the limitations assessed in the opinion are ultimately accounted for in the RFC," *Hazelton v. Comm'r of* Soc. Sec., 2017 WL 1437194, at *6 (N.D.N.Y. Apr. 21, 2017), this is not

7

such a case. Dr. Bennett expressly opined that Plaintiff's seizures would interfere with his co-workers' ability to perform their work. The Court is not persuaded by the Commissioner's argument that "the question of whether co-workers might be distracted in the event of a seizure is not a vocationally relevant question." Docket No. 14-1. An inability to work without interfering with co-workers is a specific, impairment-related limitation that clearly impacts Plaintiff's capacity for employment. *See, e.g., Chavez v. Colvin*, 2014 WL 3375011, at *6 (N.D. Ill. July 8, 2014) (vocational expert testified that a hypothetical individual "would not be able to maintain employment if the individual disrupted his coworkers every month").

The Court is further unpersuaded by the Commissioner's contention that missing one day of work per month is not a vocationally relevant limitation. In the absence of vocational expert testimony, the Court is not prepared to find that missing one day of work per month, particularly when considered in connection with Plaintiff's other limitations, would not have a significant impact on the occupational base. *See, e.g., Soto v. Colvin*, 2015 WL 1726541, at *10 (S.D.N.Y. Apr. 14, 2015) (vocational expert "testified that depending on the work environment and the supervisor, one absence per month would be tolerated, but he qualified that it would erode the number of positions available").

In sum, the Court finds that the ALJ did not comply with his obligation to provide good reasons for affording Dr. Bennett's

opinion less than controlling weight and that the error was not harmless. Accordingly, remand of the matter for further proceedings is required.

**C. The ALJ Failed to Articulate Good Reasons for Discounting Dr. Oswari's Opinion**

Plaintiff also argues that the ALJ failed to articulate good reasons for affording little weight to the opinion of his primary care physician, Dr. Oswari. Again, the Court agrees.

Dr. Oswari completed a medical source statement on October 30, 2012, in which he assessed Plaintiff's physical and mental limitations. T. 433-34. Dr. Oswari diagnosed Plaintiff with an uncontrolled seizure disorder and depression, and opined that he was moderately limited in his abilities to lift, carry, push, pull, and bend, and very limited in his ability to climb. T. 434. Dr. Oswari further opined that, with respect to his mental functioning, Plaintiff was moderately limited in his abilities to make simple decisions, maintain socially appropriate behavior without exhibiting behavior extremes, and function in a work setting in a consistent pace, and very limited in his abilities to understand and remember instructions, carry out instructions, and maintain attention/concentration. *Id*.

The ALJ afforded Dr. Oswari's opinion little weight, stating without further elaboration that it was "stated in connection with [Plaintiff's] claim for welfare, whose standards are different from those of the Social Security Administration" and that it was "inconsistent with the opinion of the consultative examiner." T. 29. This cursory consideration of Dr. Oswari's opinion does not

9

satisfy the ALJ's burden of providing good reasons for the weight afforded to it.

First, with respect to the ALJ's observation that Dr. Oswari's opinion was not issued in the Social Security context, this fact in and of itself is not a basis for discounting his medical observations. *See Trentini v. Colvin*, No. 14-CV-5238 (DLI), 2016 WL 5793658, at *12 (E.D.N.Y. Oct. 3, 2016) ("while an opinion of disability rendered for a different agency cannot bind the Commissioner, an ALJ, nevertheless, is compelled to consider the physician's statements, address the evidence in the treating physician's record, and explain his or her conclusions"). While the ALJ was of course not bound by Dr. Oswari's opinions on the ultimate issue of Plaintiff's ability to work, he was also not free to ignore Dr. Oswari's medical assessment of Plaintiff's limitations based solely on the context in which they were issued.

Second, a conclusory statement that a treating physician's opinion is inconsistent with the opinion of a consultative examiner also does not a constitute a good reason for discounting the treating physician's assessment. *See Mauro King v. Berryhill*, 251 F. Supp. 3d 438, 446 (N.D.N.Y. 2017) (ALJ erred in merely comparing treating physician's opinion to opinion of consultative examiner, as opposed to considering whether it was consistent with the other medical evidence of record and supported by clinical evidence); *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (remand required where the ALJ discounted treating physician's opinion based on the conclusory statement that it was

"inconsistent with the consultative psychologist's and medical consultant's opinions").

Accordingly, the Court finds that the ALJ violated the treating physician rule in considering Dr. Oswari's opinion, and that remand is additionally warranted on this ground.

### D. The ALJ Failed to Articulate Good Reasons for Rejecting Portions of Dr. Frost's Opinion

Plaintiff further contends that the ALJ failed to articulate good reasons for rejecting portions of an opinion rendered by treating neurologist Dr. Frost. The Court agrees in part and disagrees in part.

Dr. Frost began treating Plaintiff for epilepsy beginning in September 2012. T. 373-75. On September 6, 2013, Dr. Frost completed a residual functional capacity questionnaire in which he noted that he had treated Plaintiff every one to two months for the previous year. T. 420-23. Dr. Frost stated that Plaintiff had epilepsy and that he was having one convulsive, localized seizure per week, with associated loss of consciousness. T. 420. Plaintiff would not always have warning of an impending seizure, and could not always take safety precautions when he felt a seizure coming on. *Id*. Dr. Frost opined that Plaintiff's seizures were likely to disrupt the work of co-workers, that he would need more supervision at work than an unimpaired individual, and that he could not work at heights, work with "power machines that require an alert operator," or operate a motor vehicle. T. 422. Dr. Frost indicated that Plaintiff suffered from depression, memory problems, and behavior extremes. *Id*. He further indicated that Plaintiff

would sometimes need to take unscheduled breaks during the workday and that he was incapable of performing even low stress jobs. T. 424. According to Dr. Frost, Plaintiff was likely to have good days and bad days and to be absent from work for more than four days per month as a result of his impairment. T. 423.

In his decision, the ALJ gave "little weight" to Dr. Frost's "opinion with respect to [Plaintiff's] mental health issues because this is outside Dr. Frost's area of expertise." T. 31. Plaintiff argues that this did not constitute a good reason to discount these portions of Dr. Frost's opinion. The Court disagrees. There is no evidence in the record that Dr. Frost, a neurologist, was qualified to assess or treat mental health impairments, nor is there any evidence in the record that he in fact treated Plaintiff for any such issues. As such, his opinions on Plaintiff's mental health functioning lacked any record support, and the ALJ appropriately declined to afford them controlling weight.

However, the Court does agree with Plaintiff that it was error for the ALJ not to consider or discuss a letter from Dr. Frost dated December 2, 2013, in which Dr. Frost explained that, although Plaintiff's blood Dilantin levels had sometimes been at sub-therapeutic levels, "Dilantin levels can fluctuate widely in some patients based on metabolism and other medications they may be taking" and that "[t]his does not necessarily mean that a person is noncompliant with his medications." T. 462. Dr. Frost went on to opine that "[Plaintiff's Dilantin] levels have been fluctuating within a typical normal range for [Plaintiff]." *Id.*

12

In fashioning his RFC finding, the ALJ concluded that Plaintiff "has been non-compliant with medications and that when he is complaint, his seizures are relatively well controlled." T. 32. However, in concluding that Plaintiff had been non-compliant with his medications, the ALJ did not consider or explain what weight he gave to Dr. Frost's opinion that Plaintiff's blood Dilantin levels were in a normal range for Plaintiff specifically. This was error and, on remand, the ALJ is instructed to consider Dr. Frost's letter and explain what weight it is given and the reasons for that weight.

### E. The ALJ is Instructed to Reconsider on Remand Whether Plaintiff's Impairments Meet or Equal the Requirements of Listing 11.02

Plaintiff has also argued that the ALJ erred in considering whether Plaintiff's impairments met or equaled the requirements of Listing 11.02. The Court agrees, because the ALJ's consideration of Listing 11.02 was premised on the finding that Plaintiff had been non-compliant with his medications. *See* T. 23. However, and as explained above, the ALJ's conclusion in this regard was flawed, because he failed to consider Dr. Frost's opinion that Plaintiff's sub-therapeutic Dilantin levels were not the result of non-compliance. As such, on remand, the ALJ is instructed to reconsider whether Plaintiff's impairments meet or equal the requirements of Listing 11.02.

### V. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 10) is granted to the extent that this

13

matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's motion for judgment on the pleadings (Docket No. 14) is denied. In light of the fact that Plaintiff initially filed his applications in 2012 (nearly six years ago), on remand, the Commissioner is instructed to consider Plaintiff's claims on an expedited basis, to be completed no later than August 31, 2018. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**

                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:    January 29, 2018
            Rochester, New York.